No. 21-1068

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

ROBERT FRESE

Plaintiff – Appellant,

v.

JOHN M. FORMELLA

in his official capacity only as Attorney General of the State of New Hampshire,

Defendant – Appellee.

## PLAINTIFF – APPELLANT'S REPLY BRIEF

Appeal from the United States District Court
for the District of New Hampshire No. 1:18-cv-01180-JL

Gilles Bissonnette (Bar: 123868)
Henry R. Klementowicz (Bar: 1183553)
AMERICAN CIVIL LIBERTIES UNION OF
  NEW HAMPSHIRE
18 Low Avenue
Concord, NH 03301
Tel.: 603-227-6678
gilles@aclu-nh.org
henry@aclu-nh.org

Brian Hauss (Bar: 1183865)
Emerson Sykes (Bar: 1197408)
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
Speech, Privacy, and Technology
  Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: 212-549-2604
bhauss@aclu.org
esykes@aclu.org

*Counsel for Plaintiff-Appellant*[1]

---

[1] Additional counsel are listed on the next page.

John M. Greabe (Bar: 83125)
296 Gage Hill Road
Hopkinton, NH 03229
Tel.: 603-513-5191
jgreabe@yahoo.com

Lawrence A. Vogelman (Bar: 10280)
SHAHEEN & GORDON, P.A.
353 Central Ave. Suite 200
P.O. Box 977
Dover, NH 03821
Tel.: 603-749-5000
lvogelman@shaheengordon.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ............................................................................... 1

ARGUMENT ....................................................................................... 3

    I.    The district court should have considered how the Criminal Defamation Statute is enforced ............................................. 3

    II.    Mr. Frese has at least plausibly alleged that the common law defamation standard is too general and undefined to establish a criminal restriction on speech.................................................... 9

    III.    The district court should have allowed Mr. Frese to introduce evidence regarding the arbitrary or selective enforcement of the Criminal Defamation Statute and similar criminal defamation laws...................................................................................... 20

    IV.    Mr. Frese respectfully seeks to preserve his First Amendment challenge for Supreme Court review ................................... 26

CONCLUSION .................................................................................. 27

CERTIFICATE OF COMPLIANCE.................................................. 29

CERTIFICATE OF SERVICE .......................................................... 30

# TABLE OF AUTHORITIES

## CASES

*Act Now to Stop War & End Racism Coalition v. District of Columbia*,
  846 F.3d 391 (D.C. Cir. 2017)................................................................. 8, 18, 24

*Agnew v. Gov't of the District of Columbia*,
  920 F.3d 49 (D.C. Cir. 2019)................................................................17, 21, 24

*Ashton v. Kentucky*,
  384 U.S. 195 (1966) ..................................................................................... passim

*Boyle v. Dwyer*,
  172 N.H. 548, 216 A.3d 89 (2019) ......................................................12, 14, 16

*Cantwell v. Connecticut*,
  310 U.S. 296 (1940) ............................................................................................ 10

*Chicago v. Morales*,
  527 U.S. 41 (1999) ............................................................................................. 3, 4

*Coates v. City of Cincinnati*,
  402 U.S. 611 (1971) ..............................................................................5, 16, 18, 23

*Garrison v. Louisiana*,
  379 U.S. 64 (1964) ............................................................................................. 3, 26

*Gentile v. State Bar of Nevada*,
  501 U.S. 1030 (1991) ........................................................................................ 4, 20

*Gottschalk v. State*,
  575 P.2d 289 (Alaska 1978) ......................................................................... passim

*Gregory v. City of Chicago*,
  394 U.S. 111 (1969) .............................................................................................. 5

*Hill v. Colorado*,
  530 U.S. 703 (2000) .............................................................................................. 3

*In re Search Warrant for 1832 Candia Road*,
  171 N.H. 53, 188 A.3d 1039 (N.H. 2018)......................................................... 14

*Johnson v. United States*,
  576 U.S. 591 (2015) ..............................................................................18, 23, 25

*Keepers, Inc. v. City of Milford*,
  807 F.3d 24 (2d Cir. 2015) ................................................................................ 25

*Kolender v. Lawson*,
461 U.S. 352 (1983) ................................................................ 4, 5, 23

*Lambert v. Providence Journal Co.*,
508 F.2d 656 (1st Cir. 1975) ............................................................ 16

*Manning v. Caldwell for City of Roanoke*,
930 F.3d 264 (4th Cir. 2019) ............................................................. 7

*Nevins v. Mancini*,
No. CIV. 91-119-M, 1993 WL 764212 (D.N.H. Sept. 3, 1993) ........................ 20

*Smith v. Goguen*,
415 U.S. 566 (1974) ................................................................... 5, 18

*Thomas v. Tel. Publ'g Co.*,
155 N.H. 314, 929 A.2d 993 (2007) ..................................................... 13

*Thomson v. Cash*,
119 N.H. 371, 402 A.2d 651 (1979) ..................................................... 16

*United States v. Alvarez*,
567 U.S. 709 (2012) .................................................................. 19, 26

*United States v. Bronstein*,
849 F.3d 1101 (D.C. Cir. 2017) ...................................................... 8, 17

*United States v. Williams*,
553 U.S. 285 (2008) ............................................................... 7, 8, 17

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982) .............................................................. 4, 7, 17

*Wag More Dogs, LLC v. Cozart*,
680 F.3d 359 (4th Cir. 2012) ........................................................... 24

**STATUTES**

N.H. Rev. Stat. Ann. 644:11 .................................................... 1, 13, 14

**OTHER AUTHORITIES**

Andrew Horwitz, *Taking the Cop out of Copping a Plea: Eradicating Police Prosecution of Criminal Cases*,
40 Ariz. L. Rev. 1305 (1998) ............................................................ 5

David Pritchard, *Rethinking Criminal Libel: An Empirical Study*,
14 Comm. L. & Pol'y 303 (2009) ....................................................... 22

iii

David S. Ardia, *Reputation in a Networked World: Revisiting the Social Foundations of Defamation Law*,
45 Harv. C.R.-C.L. L. Rev. 261 (2010) ............................................................. 11

Lyrissa Lidsky, *Defamation, Reputation, and the Myth of Community*,
71 Wash. L. Rev. 1 (1996) ................................................................. 16

W. Prosser, Handbook on the Law of Torts § 111 (4th ed. 1971) .................. 12, 16

## INTRODUCTION

New Hampshire's Criminal Defamation Statute, N.H. RSA 644:11, imposes criminal penalties for speech, including speech criticizing those charged with enforcing the law. Clear standards of culpability are necessary to constrain the powerful temptation to abuse this authority. The common law of defamation is not such a standard. It does not depend on an appraisal of the nature of the statement per se, but instead asks whether the statement would tend to injure another person's reputation. In a large, pluralistic, and interconnected democracy like the United States, that standard is simply too indeterminate for a criminal restriction on speech.

The district court erred in three respects when it reconsidered its prior decisions and dismissed Mr. Frese's vagueness challenge just before the close of discovery. First, the court erred by refusing to consider how the Criminal Defamation Statute is enforced. Although the State argues that a statute's enforcement mechanisms are extrinsic to the vagueness analysis, the Supreme Court has instructed that courts should consider the *nature* of the challenged enactment. Criminal laws receive more stringent scrutiny than civil laws, and restrictions on speech receive more scrutiny than laws regulating conduct. The Criminal Defamation Statute should be subject to especially stringent scrutiny not only because it is a criminal restriction on speech, but also because police officers are

empowered to initiate prosecutions on their own initiative, indigent defendants are not entitled to representation, and there is no right to trial by jury.

Second, the district court erred in holding that the Criminal Defamation Statute survives vagueness review because it partially incorporates the common law of defamation. Under the Criminal Defamation Statute, police officers must determine whether the offending statement tended to lower the subject in the esteem of the "public," including any "professional" or "social" groups to which the subject belongs. Although the State insists that this is an objective inquiry, it is far less constrained by statutory definitions, narrowing context, or settled legal meanings than statutes requiring officers to determine whether someone is promoting child pornography, obstructing traffic, posting an event-related sign, or making a "harangue or oration" in the Supreme Court. It is much closer to laws that prohibit annoying passersby, making statements that tend to incite a breach of the peace, or treating the flag contemptuously—all of which have been struck down by the Supreme Court.

Third, the district court erred in holding that the Criminal Defamation Statute's enforcement history is irrelevant to Mr. Frese's vagueness claims. While the vagueness analysis must begin with the text of the challenged statute, it does not necessarily end there. Numerous cases from both the Supreme Court and lower courts have considered extrinsic factors, including enforcement history, to determine

whether the challenged statute invited arbitrary or selective enforcement. The State may be correct that facially clear statutes cannot be void-for-vagueness simply because they have been misapplied, but in borderline cases the vagueness analysis should be informed by experience as well as logic. Because Mr. Frese has at least plausibly alleged that the Criminal Defamation Statute invites arbitrary or selective enforcement, the district court should have allowed him the opportunity to develop the record before passing on the statute's constitutionality.

Finally, the Criminal Defamation Statute violates the First Amendment, at least insofar as it criminalizes speech criticizing public officials. Mr. Frese acknowledges that the Supreme Court's decision in *Garrison v. Louisiana*, 379 U.S. 64 (1964), appears to preclude his First Amendment claim; however, he respectfully seeks to preserve this claim for Supreme Court review at an appropriate juncture.

The district court's order dismissing this case should therefore be reversed.

## ARGUMENT

## I.    The district court should have considered how the Criminal Defamation Statute is enforced.

The vagueness test is not a purely semantic exercise, but rather an attempt to discern whether the challenged statute "provide[s] people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," and whether it "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *Chicago v. Morales*, 527 U.S. 41, 56–

3

57 (1999)). "These standards should not, of course, be mechanically applied." *Vill.*
*of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). The
functional nature of the vagueness inquiry is reflected by the fact that the degree of
vagueness tolerated by the Constitution depends on the nature of the challenged
enactment: restrictions on speech are more carefully scrutinized than restrictions on
conduct; regulations that apply to individuals are more carefully scrutinized than
regulations that apply to business organizations; and criminal laws are more
carefully scrutinized than civil laws. *Id.* at 498–99.

The Due Process Clause tolerates less ambiguity in the criminal context partly
because vague criminal laws afford "policemen, prosecutors, and juries" too much
discretion to "pursue their personal predilections." *Kolender v. Lawson*, 461 U.S.
352, 358 (1983). The "need to eliminate the impermissible risk of discriminatory
enforcement" is especially important with respect to criminal restrictions on speech,
"for history shows that speech is suppressed when either the speaker or the message
is critical of those who enforce the law." *Gentile v. State Bar of Nevada*, 501 U.S.
1030, 1050 (1991) (citations omitted). Nowhere is this risk greater than in the
context of criminal defamation.

The Supreme Court has expressed particular concern regarding laws that
afford too much discretion to police officers. *See, e.g.*, *Morales*, 527 U.S. at 64 (anti-
loitering ordinance was unconstitutionally vague because it did "not provide

sufficiently specific limits on the enforcement discretion of the police to meet constitutional standards for definiteness and clarity" (citation and internal quotation marks omitted)); *Kolender*, 461 U.S. at 358–360 ("stop and identify" statute was unconstitutionally vague because it "vest[ed] virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute" (collecting cases)); *Smith v. Goguen*, 415 U.S. 566, 575 (1974) (flag desecration statute was unconstitutionally vague because it "entrust[ed] lawmaking 'to the moment-to-moment judgment of the policeman on his beat'" (quoting *Gregory v. City of Chicago*, 394 U.S. 111, 120 (1969) (Black, J., concurring)); *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (statute that criminalized assemblies that were "annoying to persons passing by" was unconstitutionally vague because its "violation may entirely depend upon whether or not a policeman is annoyed").

This concern is at its zenith when a statute empowers police officers not only to make arrests, but to initiate and conduct prosecutions. *See* Andrew Horwitz, *Taking the Cop out of Copping a Plea: Eradicating Police Prosecution of Criminal Cases*, 40 Ariz. L. Rev. 1305, 1309 & n.20 (1998). Police officers lack legal expertise and are not bound by the ethical rules concerning conflicts of interest that constrain attorneys. *Id.* at 1309, 1311. Given the significant potential for abuse inherent in police-prosecutions, an especially stringent form of vagueness scrutiny ought to apply to criminal laws that may be enforced in this manner—especially if

5

defendants are not afforded significant procedural protections, such as the right to indigent defense counsel and the right to trial by jury.

The district court erred by expressly declining to consider the particular features of New Hampshire's misdemeanor process in assessing whether the Criminal Defamation Statute affords too much discretion to police officers. The district court's purely textual analysis failed to account for the fact that New Hampshire authorizes police departments to initiate prosecutions under the Criminal Defamation Statute "without input or approval from a state-employed and legally trained prosecutor," the fact that "criminal defamation defendants are not entitled to a trial by jury," and the fact that "state law does not afford indigent criminal defamation defendants the right to court-appointed counsel." J.A. 107 (collecting state law authorities). All of these considerations support Mr. Frese's contention that the imprecise standards of common law defamation, as modified by the Criminal Defamation Statute, invite or encourage arbitrary enforcement by police officers.

The State argues that it was not only proper but necessary for the district court to disregard the Criminal Defamation Statute's enforcement mechanisms, because "inquiries into who might be tasked with applying the challenged statute . . . are necessarily *extrinsic* to the proper analysis." Answering Br. 46. According to the State, a court addressing a facial vagueness claim must simply apply the tools of

6

statutory interpretation to determine whether the text of the challenged statute is sufficiently clear to satisfy the Due Process Clause. Answering Br. 41–42.

The problem with this theory is that the degree of indeterminacy tolerated by the Due Process Clause "depends in part on the nature of the enactment," *Hoffman Estates*, 455 U.S. at 498. To ascertain the nature of the enactment, courts must consider not just the plain text of the challenged statute but also any relevant statutory context. The Fourth Circuit's recent decision in *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264 (4th Cir. 2019) (en banc), provides a good example. There, the plaintiffs filed a vagueness challenge to a statute permitting civil interdiction of "habitual drunkards." *Id.* at 268–70. Although the challenged statute did not itself impose any criminal penalties, the Fourth Circuit held that it must be treated as a quasi-criminal statute because a civil interdiction order "is a necessary predicate for imposing the increased criminal penalties set forth in the other statutes addressing interdiction." *Id.* at 273. The court accordingly applied "a 'relatively strict' test for vagueness" and struck down the challenged provision. *Id. Manning* demonstrates that courts must consider relevant statutory context to determine the appropriate degree of vagueness scrutiny.

The State's contrary position, Answering Br. 46, relies on the Supreme Court's decision in *United States v. Williams*, 553 U.S. 285 (2008), as well as the D.C. Circuit's decisions in *United States v. Bronstein*, 849 F.3d 1101 (D.C. Cir.

7

2017), and *Act Now to Stop War & End Racism Coalition v. District of Columbia*, 846 F.3d 391 (D.C. Cir. 2017). All of these cases are inapposite. *Williams* and *Bronstein* held that the vagueness test is primarily concerned with legal indeterminacy, rather than whether the statutory term is in common usage or whether the necessary facts are easy to prove. *See Williams*, 553 U.S. at 306; *Bronstein*, 849 F.3d at 1107. *Act Now* held that a clearly defined ordinance was not vague simply because enforcement officials showed some confusion about how to apply it in discrete cases. *Act Now*, 846 F.3d at 412. The State has not identified any cases supporting the district court's decision to disregard relevant statutory context—such as the ability of police-prosecutors to initiate prosecutions under the Criminal Defamation Statute—in assessing Plaintiff's facial vagueness claim.

At the very least, the district court should have considered New Hampshire's idiosyncratic misdemeanor enforcement process when addressing Mr. Frese's hybrid vagueness claim, which alleges that the Criminal Defamation Statute is unconstitutional "as applied in the context of New Hampshire's system for prosecuting Class B misdemeanors." J.A. 158. The district court summarily dismissed this claim, holding that it fails "[f]or the reasons discussed in [the] court's facial vagueness analysis." Addendum 34. Echoing this reasoning, the State argues that Mr. Frese's hybrid vagueness claim is "subject to the same textual analysis as his facial vagueness claim." Answering Br. 51.

8

As discussed above, the State has failed to demonstrate that even a facial vagueness claim can be reduced to the application of semantic tests to statutory texts. The State's argument makes even less sense in the context of Mr. Frese's hybrid claim. Mr. Frese's hybrid claim does not ask the Court to address whether New Hampshire's Criminal Defamation Statute is unconstitutionally vague under any possible set of circumstances; rather, it asks the Court to decide whether the Criminal Defamation Statute invites or encourages arbitrary or selective enforcement as applied in the context of New Hampshire's current system for prosecuting Class B misdemeanors. Aside from its spurious insistence that courts may look outside the statutory text only in the context of purely as-applied vagueness challenges, the State offers no explanation why this Court must disregard New Hampshire's misdemeanor process in this case. Because New Hampshire's misdemeanor process raises acute concerns about arbitrary or selective enforcement, an especially stringent form of vagueness scrutiny is warranted here. The district court failed to apply the appropriate degree of scrutiny.

## II. Mr. Frese has at least plausibly alleged that the common law defamation standard is too general and undefined to establish a criminal restriction on speech.

Even under the generic form of stringent scrutiny applied to all criminal restrictions on speech, the Criminal Defamation Statute is too indeterminate to satisfy the Due Process Clause. The district court rejected this argument, holding

9

that the Criminal Defamation Statute's "adoption of the common law defamation standard does much to rein in any alleged vagueness." Addendum 28. Mr. Frese does not dispute that the Criminal Defamation Statute partially incorporates New Hampshire's common law of civil defamation, but the common law of civil defamation is too indeterminate to define a criminal restriction on speech.

The Supreme Court addressed a similar problem in *Ashton v. Kentucky*, 384 U.S. 195 (1966). There, a labor organizer was convicted for the common law crime of libel—which was defined by the trial court to include any false statement, made with malice, that was calculated to create a breach of the peace—after distributing pamphlets alleging *inter alia* that the police chief had illegally collected money as a guard for a mine operator's home and that the sheriff had used excessive force against suspects. *Id.* at 197–98. The Supreme Court held that the common law "breach of the peace" standard was unconstitutionally vague because "[i]t involves calculations as to the boiling point of a particular person or a particular group, not an appraisal of the nature of the comments per se." *Id.* at 200. Emphasizing that laws restricting speech require especially stringent vagueness scrutiny, the Court refused to countenance "a conviction for an utterance 'based on a common law concept of the most general and undefined nature.'" *Id.* at 201 (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940)). *Ashton* thus refutes the suggestion that a criminal

10

restriction on speech may withstand vagueness scrutiny just because it incorporates an established common law standard.

In *Gottschalk v. State*, the Alaska Supreme Court applied the principles set forth in *Ashton* to a criminal defamation law similar to the one at issue here. The statute in *Gottschalk* incorporated Alaska's common law of defamation, according to which "any statement which would tend to disgrace or degrade another, to hold him up to public hatred, contempt or ridicule, or to cause him to be shunned or avoided was considered defamatory." 575 P.2d 289, 292 (Alaska 1978). The defendant was convicted under the criminal defamation statute after accusing a state trooper of stealing money from him. *Id.* at 289.

The Alaska Supreme Court held that the common law of defamation "falls far short of the reasonable precision necessary to define criminal conduct." *Id.* at 292. It explained that, under the common law standard, "[w]hether an utterance is defamatory depends on the values of the listener," and even in a "homogeneous culture these values will not be uniform." *Id.* at 293. "Establishing a standard against which potentially defamatory statements may be measured generates considerable difficulty in a democratic society which prides itself on pluralism." *Id.* at 293 n.11. *See also* David S. Ardia, *Reputation in a Networked World: Revisiting the Social Foundations of Defamation Law*, 45 Harv. C.R.-C.L. L. Rev. 261, 302 (2010) (arguing that the premise underlying the common law's community segment

11

determination—"that society is comprised of relatively homogeneous communities that enjoy widespread consensus on social norms"—does not apply to the Internet).

For one thing, "American courts generally recognize that a person may suffer real damage by statements which tend to tarnish his reputation *within a particular group or class* even though the measuring group may be a small minority." *Gottschalk*, 575 P.2d at 293 n.11 (emphasis added); *see also Boyle v. Dwyer*, 172 N.H. 548, 553, 216 A.3d 89, 94 (2019) ("The complained-of language must tend to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority." (cleaned up) (citation omitted)). Thus, the insinuation that a kosher butcher sells bacon, that a person is about to be divorced, or that a business engages in price-cutting may be held defamatory, even though such statements would not lower the subject in the esteem of most people. *Gottschalk*, 575 P.2d at 293 n.11 (citing W. Prosser, Handbook on the Law of Torts § 111, at 743–44 (4th ed. 1971)).

"A parallel problem is that what is defamatory changes over time." *Id.* For instance, "labeling someone a 'communist' or a 'marxist', which within the past 50 years has been considered first defamatory, then non-defamatory, and next defamatory again, depending largely on United States foreign policy changes." *Id.* (citing Prosser at 744 nn.3, 4). Given these problems, the Alaska Supreme Court concluded that the vagueness inherent in the common law standard invited

12

"arbitrary, uneven and selective enforcement"—as evidenced by the fact that the first reported application of the statute (the conviction under review) concerned a prosecution for speech critical of law enforcement. *Id.* at 294.

The district court attempted to distinguish *Gottschalk* on the ground that Alaska's criminal defamation law *fully* incorporated the common law standard, which was defined to include statements "which would tend to disgrace or degrade another, to hold him up to public hatred, contempt or ridicule, or to cause him to be shunned or avoided." *Id.* at 292; *see also Thomas v. Tel. Publ'g Co.*, 155 N.H. 314, 338, 929 A.2d 993, 1015 (2007) (applying a similar standard). New Hampshire's Criminal Defamation Statute, on the other hand, only partly incorporates the common law formulation. It criminalizes statements that "tend to expose any other living person to public hatred, contempt or ridicule." N.H. RSA 644:11(I). According to the district court, the Criminal Defamation Statute's shorter formulation suggests that it "arguably imposes a higher threshold" for defamatory meaning than the common law. Addendum 27 n.38. *See also* Answering Br. 34 (repeating this argument).

This is a distinction without a difference, at least for purposes of the vagueness analysis. Neither the district court nor the State has explained how the difference between the common law formulation and the statutory formulation makes the Criminal Defamation Statute any more definite or more stringent than the common

law. Indeed, the State's core argument is that the Criminal Defamation Statute sets forth a sufficiently objective and discernible standard precisely because it incorporates the common law of defamation. Answering Br. 32–40. The State cannot simultaneously argue that the Criminal Defamation Statute survives vagueness review because it incorporates the common law standard and also that any vagueness inherent in the common law standard is irrelevant because the Criminal Defamation Statute applies some undefined limiting principle absent from the common law.

The State alternatively argues that *Gottschalk* is distinguishable "because, unlike the subjective standard at issue in *Gottschalk*, New Hampshire's common-law defamation standard is objective." Answering Br. 12. The State acknowledges, as it must, that the Criminal Defamation Statute incorporates the social mores of the victim's professional and social groups as multiple yardsticks for culpability. *Id.* at 38.[2] But it asserts that this rule does not raise vagueness concerns, because "the New

---

[2] Under the common law standard, a statement is defamatory if it "tend[s] to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority." *Boyle*, 172 N.H. at 554, 216 A.3d at 95 (citation omitted). The Criminal Defamation Statute adds that the public "includes any professional or social group of which the victim of the defamation is a member." N.H. RSA 644:11(II). Two points stand out. First, the Criminal Defamation Statute's gloss on the common law standard is not limited to substantial or respectable groups. Second, the Criminal Defamation statute's use of the term "includes" suggests that the "public" is not limited to the victim's professional and social groups. *See In re Search Warrant for 1832 Candia Road*, 171 N.H. 53, 59, 188 A.3d 1039, 1045 (N.H. 2018). The statute accordingly expands the common law standard to include both any substantial and respectable group *and* any professional or social group to which the victim belongs, as Mr. Frese argued before the district court. *See* J.A. 15.

14

Hampshire Supreme Court has made clear" that, once the relevant community is defined, "an objective standard applies" to determine whether the challenged "statement would 'tend to lower the plaintiff in the esteem' *of* that community." *Id.*

It is unclear how this "objective" defamation standard differs from the "subjective" standard in *Gottschalk*, which similarly focused on "statements [that] tend to tarnish [a person's] reputation within a particular group or class even though the measuring group may be a small minority." 575 P.2d at 293 n.11. *See also Ashton*, 384 U.S. at 200 (holding that the "breach of the peace" standard is unconstitutionally vague because "it involves calculations as to the boiling point of a particular person or a particular group, not an appraisal of the nature of the comments per se"). In any event, New Hampshire's "objective" defamation standard is similarly riddled with indeterminacy.

First, the decisionmaker must ascertain the relevant professional or social group, without any guidance as to what the term "social group" means in this context. Second, the decisionmaker must ascertain the relevant group's shared values. Finally, the decisionmaker must determine whether the offending statement would tend to harm the victim's reputation in the relevant group. All of these questions leave ample room for the exercise of unguided discretion. In practice, the intuitions of one particular group—those charged with enforcing the law—are likely to carry determinative weight. *See* Lyrissa Lidsky, *Defamation, Reputation, and the*

15

*Myth of Community*, 71 Wash. L. Rev. 1, 8 (1996). The Criminal Defamation Statute entrusts that discretion to the officer making an arrest or initiating a prosecution. *Cf. Coates*, 402 U.S. at 614 ("The city is free to prevent people from blocking sidewalks, obstructing traffic, littering streets, committing assaults, or engaging in countless other forms of antisocial conduct. . . . It cannot constitutionally do so through the enactment and enforcement of an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed.").

Not to worry, the State counsels: The New Hampshire Supreme Court has held that "the defamatory meaning must be one that could be ascribed to the words by persons of common and reasonable understanding." *Boyle*, 172 N.H. at 553, 216 A.3d at 95 (quoting *Thomson v. Cash*, 119 N.H. 371, 373, 402 A.2d 651, 653 (1979)); *see also* Answering Br. 34–35. This is not the strong medicine the State makes it out to be. It provides that a court must interpret the defendant's words reasonably, and that "[n]o mere claim of the plaintiff can add a defamatory *meaning* where none is apparent from the publication itself." *Thomson*, 119 N.H. at 373, 402 A.2d at 653 (emphasis added) (quoting Prosser at 749). In other words, "innuendo cannot be used to enlarge the natural meaning of the words actually used." *Lambert v. Providence Journal Co.*, 508 F.2d 656, 659 (1st Cir. 1975).

This rule does not limit the multiplicity of inherently subjective community standards that must be considered to determine whether the statement, reasonably

interpreted, would tend to injure the subject's reputation in the relevant community. *Cf. Agnew v. Gov't of the District of Columbia*, 920 F.3d 49, 59 (D.C. Cir. 2019) (noting that the anti-obstructing statute did not require police officers to "guess at or make projections about what is in the minds of passersby" in order to observe whether the defendant's conduct was obstructing traffic). Even if it did, an "objective" reasonableness standard for determining whether a statement would tend to injure the victim's reputation would present serious vagueness problems in a large, pluralistic democracy like the United States.

The "common law concept" of civil defamation is simply too "general and undefined" for a criminal restriction on speech. *Ashton*, 384 U.S. at 201; *see also Hoffman Estates*, 455 U.S. at 498–99 (holding that criminal laws are subject to more stringent vagueness scrutiny than civil laws). A criminal law prohibiting statements that tend to harm someone's reputation among their "professional or social" groups, or some "substantial and respectable" portion of the community, provides much less notice about what is prohibited—and leaves much more room for the pursuit of personal predilections, unconstrained by "statutory definitions, narrowing context, or settled legal meanings," *Williams*, 553 U.S. at 306—than restrictions on promoting child pornography, *id.*; obstructing a public street, sidewalk, or building entrance, *Agnew*, 920 F.3d at 56–57; making a "harangue or oration" in the Supreme Court's building and grounds, *Bronstein*, 849 F.3d at 36–37; or posting an "event-

17

related" sign, *Act Now*, 846 F.3d at 316. The Criminal Defamation Statute's broad and indeterminate sweep much more closely resembles laws requiring police officers to ascertain whether a suspect's statement would tend to cause a breach of the peace, *Ashton*, 384 U.S. at 200–01; whether the suspect is "annoying" passersby, *Coates*, 402 U.S. at 614; or whether they are "contemptuously" handling the flag, *Smith*, 415 U.S. at 573–76.[3]

The State contends that the Criminal Defamation Statute's *mens rea* requirements—i.e., that the defendant must know that the statement was false and must know that it would tend to hold the victim up to public hatred, contempt, or ridicule—cures any vagueness problems that might arise under the Criminal Defamation Statute. Answering Br. 30–32, 36. But the existence of a *mens rea* requirement cannot alleviate the vagueness inherent in such an ill-defined standard. *See Smith*, 415 U.S. at 580 (holding that a *mens rea* requirement would not "clarify what conduct constitutes [contemptuous treatment of the flag], whether intentional or inadvertent"); *Ashton*, 384 U.S. at 200 (reversing a criminal defamation conviction, where the crime was defined as false and malicious defamatory

---

[3] Of course, there are some statements that are indisputably defamatory. The classic examples are statements falsely accusing someone of a crime. But the Supreme Court's "*holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson v. United States*, 576 U.S. 591, 602 (2015).

statements that were "*calculated* to create disturbances of the peace" (emphasis added)).

Although it did not address a vagueness challenge, *United States v. Alvarez*, 567 U.S. 709 (2012), is instructive. There, the Court held that the Stolen Valor Act, which made it a crime to falsely claim to have been awarded military decorations, violated the First Amendment. *See id.* at 715. The Act could have been "construed to prohibit only knowing and intentional acts of deception about readily verifiable facts within the personal knowledge of the speaker, thus reducing the risk that valuable speech is chilled." *Id.* at 736 (Breyer, J., concurring in part and concurring in the judgment). But this limiting construction would not have cured the statute's constitutional defects. There remained "a risk of chilling [protected speech] that is not completely eliminated by *mens rea* requirements; a speaker might still be worried about being *prosecuted* for a careless false statement, even if he does not have the intent required to render him liable." *Id*. Furthermore, *mens rea* requirements would not have prevented the statute from being applied "subtly but selectively to speakers that the Government does not like." *Id.* at 737.

The same considerations apply here. A person may reasonably fear arrest or prosecution under the Criminal Defamation Statute even if he does not intend to commit defamation, as Mr. Frese's case demonstrates. Furthermore, while defamation may be committed many thousands of times a day, history shows that

19

the risk of prosecution often falls on people who are "critical of those who enforce the law." *Gentile*, 501 U.S. at 1051. *See Ashton*, 384 U.S. at 197–98; *Gottschalk*, 575 P.2d at 294; *see also* J.A. 127 (observing that "Frese's case is not the first reported decision of a municipal police department that prosecuted an individual who criticized one of its officers" (citing *Nevins v. Mancini*, No. CIV. 91-119-M, 1993 WL 764212, at *1–2 (D.N.H. Sept. 3, 1993))).

### III.  The district court should have allowed Mr. Frese to introduce evidence regarding the arbitrary or selective enforcement of the Criminal Defamation Statute and similar criminal defamation laws.

As set forth in Mr. Frese's Opening Brief, he had developed an evidentiary record to support his allegation that the Criminal Defamation Statute invites arbitrary or selective enforcement against those who are critical of law enforcement officers or other government employees. Opening Br. 31–32 & n.4. Mr. Frese intended to present records showing that six of the twenty-six criminal defamation prosecutions for the period from 2009 to 2017 (which excludes Mr. Frese's case) involved statements to or about police officers, and that another three involved statements about other public officials or government employees.

During the pendency of this appeal, Mr. Frese's counsel has become aware of yet another case exemplifying this pattern of selective enforcement: Last year, a woman was referred to a county attorney's office to determine whether she should be charged under the Criminal Defamation Statute for statements that (the office

claims) she anonymously made in 2019 and 2020 on Facebook and Craigslist criticizing a police captain. After investigation, including by the police captain's own department, the county attorney's office sent the woman a letter. The letter stated that, "[a]fter a thorough review of the casefile[,] . . . I concluded that there was sufficient evidence to bring forward a criminal defamation charge against you." While the prosecutor "felt that filing charges against you was an appropriate recourse," the police captain "did not wish to press charges at this time." The prosecutor warned that the woman should "cease and desist with this behavior," and that the "[f]ailure to do so will result in reversal of my earlier decision not to bring charges against you."[4]

Unfortunately, the district court dismissed Mr. Frese's case three days before the close of discovery. The court reasoned that any evidence Mr. Frese might have submitted would have been irrelevant because "identified instances of a statute's misapplication do not tell us whether the law is [facially] unconstitutional." Addendum 32 (quoting *Agnew*, 920 F.3d at 60). For the same reason, the court also disregarded the academic articles Mr. Frese identified "suggesting that criminal

---

[4] Information related to this incident has been conveyed to opposing counsel. It is not attached to this brief, because it is outside the record on appeal. The information can be made available to the Court upon request.

defamation statutes are routinely enforced in a selective, political manner." *Id. See also* Opening Br. at 36–37 (collecting authorities).[5]

The State argues that the district court was right to disregard any potential evidence regarding the Criminal Defamation Statute's enforcement, or the enforcement of similarly worded statutes, because "the specific circumstances in which the statute has been or could be enforced . . . are necessarily *extrinsic* to the proper analysis." Answering Br. 46. Under the State's theory, it would not matter if *all* of the prosecutions brought under the Criminal Defamation Statute involved criticism of police officers. The State's categorical assertion that any considerations outside the statutory text are necessarily extrinsic to the facial vagueness analysis is not consistent with the case law.

---

[5] Mr. Frese respectfully wishes to clarify that Professor David Pritchard's article concluded that "the vast majority of criminal libel prosecutions had nothing to do with politics or public issues." David Pritchard, *Rethinking Criminal Libel: An Empirical Study*, 14 Comm. L. & Pol'y 303, 317 (2009). Professor Pritchard found that "about one-fifth of criminal libel prosecutions (thirteen of sixty-one) since the early 1990s in Wisconsin had roots in criticism of public officials or discussion of public issues." *Id.* at 327. Roughly another fifth "resulted from criticisms of government employees who were not public officials," including several "criminal libel prosecutions [that] stemmed from accusations of misconduct against police or other people involved in law enforcement or corrections." *Id.* at 331. Professor Pritchard determined that this second set of prosecutions involved "malicious lies," rather than "issues of public concern that were being discussed in a community." *Id.* Mr. Frese submits that such prosecutions may nonetheless evince selective enforcement of criminal defamation statutes, but wishes to make clear that this inference is his own, not Professor Pritchard's.

In *Johnson*, the Supreme Court surveyed a number of Supreme Court and circuit court decisions inconsistently applying the Armed Career Criminal Act to support its conclusion that the ACCA's residual clause invites or encourages arbitrary or selective enforcement. *See* 576 U.S. at 598–602. The State argues that *Johnson* is inapposite because it concerned *judicial* applications of the statute. Answering Br. 47.[6] In *Kolender*, the Supreme Court cited the *government's* representation at oral argument about how the challenged "stop-and-identify" statute operated in practice to support its conclusion that the statute conferred excessive discretion on police officers. 461 U.S. at 360. *See also Coates*, 402 U.S. at 616 n.6 (noting, in support of the conclusion that the city's anti-annoyance ordinance invited discriminatory enforcement, that "[t]he alleged discriminatory enforcement of this ordinance figured prominently in the background of the serious civil disturbances that took place in Cincinnati in June 1967"). The State parries that "[t]his is hardly a full-throated endorsement of the type of analysis Mr. Frese envisions in this case." Answering Br. 47–48.

Mr. Frese's Opening Brief identified two cases supporting precisely the sort of analysis suggested here. Opening Br. 33–34. In *Wag More Dogs, LLC v. Cozart*, the Fourth Circuit stated that it would consider enforcement evidence in a vagueness

---

[6] The records Mr. Frese planned to introduce in this case also reflect judicial applications of the Criminal Defamation Statute in the form of guilt findings.

challenge "if and when a pattern of unlawful favoritism appears." 680 F.3d 359, 372 (4th Cir. 2012). And in *Gottschalk*, the Alaska Supreme Court held that the state's criminal defamation law was unconstitutionally vague after reviewing studies showing that similarly worded defamation laws across the country have been disproportionately enforced against those who criticize government officials or employees. 575 P.2d 294–95 & n.13. The court also noted that the enforcement of Alaska's criminal defamation law was consistent with nationwide trends. Although criminal defamation was undoubtedly committed "many times each day in the State of Alaska . . . the first case since the organization of the Territory of Alaska in which a prosecution is reflected in the reported cases" involved accusations of misconduct against a state trooper. *Id.* at 294 (footnote omitted). The court held that "[t]his pattern of selective enforcement is both the hallmark and the vice of a vague criminal statute." *Id.* at 295. Unable to identify any plausible grounds for distinguishing these cases, the State simply urges this Court to ignore them. *See* Answering Br. 47–48.

The State cites a few cases for the proposition that evidence of improper application is insufficient to support a vagueness challenge against a facially clear statute. *See Agnew*, 920 F.3d at 59–60 (holding that allegations of racially discriminatory prosecution would not support a vagueness challenge against a facially clear anti-obstructing statute); *Act Now*, 846 F.3d at 411–12 (rejecting a vagueness challenge to a municipal signage regulation, even though there was "some

evidence" that it was "susceptible of inconsistent application," because the regulation itself was "clear"); *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 37–38 (2d Cir. 2015) ("When the text of an ordinance is sufficiently clear to satisfy the Due Process Clause, a municipal official's inability to supply precise answers regarding its hypothetical application is insufficient to render that ordinance unconstitutionally vague." (footnote omitted)).

For the reasons already discussed, *see* Section II *supra*, the Criminal Defamation Statute does not satisfy the stringent review that ought to apply under these circumstances. But if this Court concludes that the question is close, decisions about the constitutionality of New Hampshire's Criminal Defamation Statute should be made on the basis of a developed record, including evidence of arbitrary or selective enforcement. As the Supreme Court reiterated in *Johnson*, "the life of the law is experience." 576 U.S. at 601. This country's long experience with criminal defamation laws, and New Hampshire's particular experience with the Criminal Defamation Statute, should inform the vagueness analysis. Because Mr. Frese has at least plausibly alleged that the Criminal Defamation Statute is unconstitutionally vague, it was error for the district court to dismiss this case just before the close of discovery.

IV.    **Mr. Frese respectfully seeks to preserve his First Amendment challenge for Supreme Court review.**

In *Garrison v. Louisiana*, 379 U.S. 64, the Supreme Court held that criminal defamation statutes must require the government to demonstrate actual malice, but declined to hold that criminal defamation laws categorically violate the First Amendment. Justices Black, Douglas, and Goldberg each argued in their respective concurrences that the Court should declare criminal defamation laws constitutionally invalid insofar as they criminalize criticism of public officials. *See id.* at 79–88. Subsequent precedents have undermined the justifications for allowing the government to criminalize speech defaming its officials and employees. *See, e.g.*, *Alvarez*, 567 U.S. at 718–19 (rejecting *Garrison*'s dicta that false speech is categorically unprotected under the First Amendment).

It is time for the Supreme Court to revisit whether criminal defamation are consistent with the First Amendment, especially insofar as they perpetuate the doctrine of seditious libel by giving law enforcement officers and government officials the power to prosecute their critics. The State argues that this Court is without power to revisit *Garrison*. Answering Br. 52. Mr. Frese does not dispute that conclusion. He raises this argument in order to preserve it for the Supreme Court's consideration at an appropriate juncture.

# CONCLUSION

Although the common law of defamation is appropriate for civil claims, it is too sweeping and indeterminate for a criminal restriction on speech. Because Mr. Frese has at least plausibly alleged that the Criminal Defamation Statute is unconstitutionally vague on its face or as applied in the context of New Hampshire's idiosyncratic process for prosecuting Class B misdemeanors, the district court's order dismissing the case should be reversed. Alternatively, the Criminal Defamation Statute should be deemed to violate the First Amendment insofar as it applies to criticism of public officials.

Dated: September 20, 2021

Gilles Bissonnette (Bar: 123868)
Henry R. Klementowicz (Bar: 1183553)
AMERICAN CIVIL LIBERTIES UNION OF
  NEW HAMPSHIRE
18 Low Avenue
Concord, NH 03301
Tel.: 603-227-6678
gilles@aclu-nh.org
henry@aclu-nh.org


John M. Greabe (Bar: 83125)
296 Gage Hill Road
Hopkinton, NH 03229
Tel.: 603-513-5191
jgreabe@yahoo.com

Respectfully submitted,

*/s/ Brian Hauss*
Brian Hauss (Bar: 1183865)
Emerson Sykes (Bar: 1197408)
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
Speech, Privacy, and Technology
  Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: 212-549-2604
bhauss@aclu.org
esykes@aclu.org


Lawrence A. Vogelman (Bar: 10280)
SHAHEEN & GORDON, P.A.
353 Central Ave. Suite 200
P.O. Box 977
Dover, NH 03821
Tel.: 603-749-5000
lvogelman@shaheengordon.com

28

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7) as well as the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5)–(6). The brief, excluding parts exempted by Fed. R. App. P. 32(f), contains 6,398 words, and was prepared with proportionally spaced, 14-point Times New Roman font.

Dated: September 20, 2021                    */s/ Brian Hauss*
                                             Brian Hauss (Bar: 1183865)

## CERTIFICATE OF SERVICE

I certify that on September 20, 2021, the forgoing Brief was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent by email to all parties, including to opposing counsel at the New Hampshire Department of Justice, 33 Capitol Street, Concord, NH 03301, by operation of the Court's electronic filing system.

Dated: September 20, 2021                    */s/ Brian Hauss*
                                             Brian Hauss (Bar: 1183865)